**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JASON LEOPOLD, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>FEDERAL HOUSING FINANCE AGENCY,<br><br>*Defendant*. | Civil Action No. 23 - 1935 (SLS)<br>Judge Sparkle L. Sooknanan |

**<u>MEMORANDUM OPINION</u>**

In March 2023, three banks regulated by the Federal Home Finance Agency (FHFA) shuttered. In the wake of their collapse, Jason Leopold—a reporter for Bloomberg News—submitted a Freedom of Information Act (FOIA) request to obtain documents about FHFA's oversight of the banks. When FHFA did not respond, Mr. Leopold and Bloomberg sued. For more than three years, the Parties have worked together to produce and review the requested documents. Now, both sides seek summary judgment with respect to documents that FHFA has withheld in full or in part. For the reasons below, the Court grants in part and denies in part both motions.

## BACKGROUND

### A. Statutory Background

"FOIA 'implement[s] a general philosophy of full agency disclosure.'" *Informed Consent Action Network v. NIH*, No. 23-cv-926, 2026 WL 585104, at *1 (D.D.C. Mar. 3, 2026) (alteration in original) (quoting *DOJ v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 754 (1989)). The statute "requires every federal agency, upon request, to make 'promptly available to any person' any 'records' so long as the request 'reasonably describes such records.'" *Assassination*

*Archives & Rsch. Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting 5 U.S.C. § 552(a)(3)). "Agencies must construe FOIA requests liberally and can only withhold or redact documents if the information requested 'falls within one of nine statutory exemptions.'" *Informed Consent Action Network*, 2026 WL 585104, at *1 (quoting *People for the Ethical Treatment of Animals* (*PETA*) *v. NIH*, 745 F.3d 535, 540 (D.C. Cir. 2014)); *see* 5 U.S.C. § 552(b)(1)–(9). These exemptions demonstrate that the public's right to information is "not absolute and that disclosure of certain information may harm legitimate governmental or private interests[.]" *Martin v. DOJ*, 488 F.3d 446, 453 (D.C. Cir. 2007) (cleaned up). The agency bears the burden of establishing that an exemption applies and ordinarily "must disclose all reasonably segregable, nonexempt portions of the requested record(s)." *PETA*, 745 F.3d at 540 (cleaned up). And the agency must show that it "reasonably foresees that disclosure would harm an interest protected by" one of FOIA's nine exemptions or that disclosure is otherwise prohibited by law. 5 U.S.C. § 552(a)(8)(A).

**B. Factual and Procedural Background**

The Court draws the facts from the Parties' Statements of Material Facts and the underlying materials referenced in those statements. *See* Pls.' Statement of Undisputed Material Facts (PSOF), ECF No. 37-2; Def.'s Statement of Undisputed Material Facts (DSOF), ECF No. 40-3. The Court assumes the facts in those statements to be true unless they have been specifically disputed, and it assumes the truth of other undisputed statements in the record. *See* Fed. R. Civ. P. 56(e)(2); *see also* LCvR 7(h)(1).[1]

Mr. Leopold is an investigative reporter at Bloomberg News. Compl. ¶ 2, ECF No. 1. FHFA is a federal agency that regulates eleven banks in the Federal Home Loan Banks (FHLB)

[1] Local Rule 7(h) provides that "the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h)(1).

system, as well as the Federal Home Loan Mortgage Corporation, the Federal National Mortgage Association, and the Office of Finance. *See* 12 U.S.C. § 4511(b)(2).

In March 2023, three banks in the FHLB system—Silicon Valley Bank, Signature Bank, and Silvergate Bank—collapsed. That same month, Mr. Leopold submitted a FOIA request to FHFA seeking the following records: (1) "FHFA's internal rating system identifying safety and soundness for each individual FHLB bank" from January 1, 2018, to the date of search; (2) "quarterly supervisory reports" for the same period; and (3) "[e]mails, text messages, memos and letters, referencing [the three banks] . . . includ[ing] any correspondence sent to state officials, such as Governor Gavin Newsom or anyone on his staff." PSOF ¶ 7; DSOF ¶ 1. FHFA acknowledged receipt of the request on April 3, 2023. PSOF ¶ 8.

In July 2023, Mr. Leopold and Bloomberg sued, alleging that FHFA had violated FOIA by failing to respond to the request. Compl. at 3–4. Over three years have passed since then, during which FHFA conducted a search that uncovered responsive records, produced some records, and withheld others in whole or in part under various FOIA exemptions. PSOF ¶¶ 10–15. The Parties now cross-move for summary judgment. *See* Pls.' Mot. Summ. J. (Mot.), ECF No. 37; Def.'s Opp'n & Cross-Mot. Summ. J. (Cross-Mot.), ECF No. 41; Pls.' Reply & Cross-Opp'n, ECF No. 42; Def.'s Cross-Reply, ECF No. 44; Pls.' Sur-Reply, ECF No. 47. Those motions are ripe for review.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a FOIA suit, an agency is entitled to summary judgment if "no material facts are in dispute" and it establishes that all information subject to a request has either "been produced . . . or is wholly exempt from the Act's inspection

requirements." *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (cleaned up). Typically, an "agency demonstrates the applicability of a FOIA exemption by providing affidavits regarding the claimed exemptions." *Shapiro v. DOJ*, 893 F.3d 796, 799 (D.C. Cir. 2018). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *ACLU v. DOD*, 628 F.3d 612, 619 (D.C. Cir. 2011). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (cleaned up).

## DISCUSSION

The Plaintiffs challenge FHFA's reliance on FOIA Exemptions 4, 5, 6, and 8 to withhold 2,221 records in whole or in part. They argue that FHFA has failed to carry its burden at the summary judgment stage to furnish adequate factual support for its withholdings. *See* Pls.' Reply & Cross-Opp'n 2–3. And they contend that FHFA did not heed FOIA's command to "withhold information . . . only if . . . the agency reasonably foresees that disclosure would harm an interest protected by an exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I). For the most part, the Plaintiffs' arguments come up short. FHFA has met its burden, except for its Exemption 5 withholdings.[2]

[2] The Plaintiffs raise two procedural arguments, neither of which changes things. *First*, they ask the Court to disregard a declaration submitted with FHFA's opposition, *see* Wright Decl., ECF No. 40-2, because it was "unsworn and unsigned." Pls.' Reply & Cross-Opp'n 2. But FHFA has since submitted a signed copy and explained that it uploaded the unsigned document in error. *See* Def.'s Cross-Reply 1; Reuploaded Wright Decl. 16, ECF No. 44-1. *Second*, the Plaintiffs claim that FHFA's eight-paragraph Statement of Undisputed Facts fails to comply with Local Rule 7(h) because it does not include the requisite facts and record citations. Despite its length, the statement does not violate Local Rule 7(h), particularly when considered alongside FHFA's Response to the Plaintiffs' Statement of Undisputed Material Facts, *see* ECF No. 41-1. *See Grimes v. D.C.*, 794 F.3d 83, 98 (D.C. Cir. 2015) (Griffith, J., concurring) (explaining that "all that the [Local Rules]

**A. Exemption 8**

The Court begins with Exemption 8, which covers 2,056 of the 2,221 withholdings reported on the *Vaughn* index. *See* Pls.' Reply & Cross-Opp'n 16 n.7; Def.'s Cross-Reply 2. It concludes that FHFA properly invoked Exemption 8 to withhold these records.

Exemption 8 protects information "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions." 5 U.S.C. § 553(b)(8).[3] Notwithstanding the "general rule requiring that [courts] interpret FOIA's exemptions narrowly," *Pub. Invs. Arb. Bar Ass'n v. SEC*, 771 F.3d 1, 5 (D.C. Cir. 2014), the D.C. Circuit has "explained time and again that Exemption 8's scope is 'particularly broad,'" *id.* at 4 (quoting *Consumers Union of U. S., Inc. v. Heimann*, 589 F.2d 531, 533 (D.C. Cir. 1978)). Congress enacted Exemption 8 to "ensure the security of financial institutions" and "safeguard the relationships between the banks and their supervising agencies." *Jud. Watch, Inc. v. Dep't of Treasury*, 796 F. Supp. 2d 13, 37 (D.D.C. 2011). It "address[es] the 'concern[] that release of bank examination and operating reports could endanger the fiscal well-being of [] subject banks.'" *Pub. Invs. Arb. Bar Ass'n*, 771 F.3d at 5 (quoting *Heimann*, 589 F.2d at 537). The text of Exemption 8 reflects that "Congress has intentionally and unambiguously crafted a particularly broad, all-inclusive definition" of records that may be withheld, and "it is not [the] function [of courts], even in the FOIA context, to subvert that effort." *Heimann*, 589 F.2d at 533.

---

require" is "submi[ssion] [of] a statement of undisputed material facts and a brief explaining why summary judgment was appropriate"). In any event, a summary-judgment movant may rely on "affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), as FHFA has done here. So any purported defect in FHFA's statement is not dispositive.

[3] The Plaintiffs do not dispute that FHFA is an "agenc[y] responsible for the regulation or supervision of financial institutions" under FOIA. *See* 12 U.S.C. § 4525.

Here, the Plaintiffs challenge FHFA's Exemption 8 withholdings on three related grounds. They argue that FHFA: (1) failed to specify whether the withheld information is either "contained in" or "related to" the relevant report, (2) failed to specify the type of report—*i.e.*, whether it is an examination, operating, or condition report, and (3) failed to demonstrate that certain of the withheld information is "contained in" or "related to" a report at all. *See* Pls.' Reply & Cross-Opp'n 17–20. In a nutshell, the Plaintiffs' view is that FHFA must identify a *specific* report to which the withheld information pertains to invoke Exemption 8. But Exemption 8 does not require such a showing.

The D.C. Circuit has yet to address this question. *See Pub. Invs. Arb. Bar Ass'n*, 771 F.3d at 7 (declining to reach "the doctrinal question of whether each withheld document must relate to a specific examination report"). But most courts in this District have rejected the Plaintiffs' narrow reading of Exemption 8. Those courts reason that Exemption 8 "covers all material that is 'related to' [examination, operating, or condition] reports, not just reports themselves. Hence, the 'related to' language casts a wide net of non-disclosure over any documents that are logically connected to an 'examination, operating, or condition report[.]'" *Pub. Invs. Arb. Bar Ass'n*, 930 F. Supp. 2d at 62 (quoting 5 U.S.C. § 552(b)(8)); *see also Williams & Connolly LLP v. Off. of the Comptroller of the Currency*, 39 F. Supp. 3d 82, 91 (D.D.C. 2014). Under the majority view, "Exemption 8 *does not* require the defendant to identify a specific report to which the information relates." *Pub. Invs. Arb. Bar Ass'n*, 930 F. Supp. 2d at 62 (emphasis added) (cleaned up); *see also Pub. Invs. Arb. Bar Ass'n*, 771 F.3d at 7 (noting that courts in this District have concluded that each document withheld under Exemption 8 "need not" "relate to a specific examination report"); *McKinley v. FDIC*, 744 F. Supp. 2d 128, 143–45 (D.D.C. 2010) (*McKinley I*), *aff'd sub nom. McKinley v. Bd. of Governors of Fed. Rsrv. Sys.*, 647 F.3d 331 (D.C. Cir. 2011).

In support of their reading of Exemption 8, the Plaintiffs rely solely on *McKinley v. FDIC*, 268 F. Supp. 3d 234 (D.D.C. 2017) (*McKinley II*). *See* Pls.' Reply & Cross-Opp'n 17–19. There, the court required the agency to specify (1) "whether each of the [withheld] documents consists of information that is directly *contained in* one of the three enumerated reports, or whether they include information that is simply *related to* any such report"; and (2) "whether [the agency] characterizes the relevant report as an examination report, an operating report, or a condition report" to invoke Exemption 8. *McKinley II*, 268 F. Supp. 3d at 245–46. The Plaintiffs posit that "if the agency must specify the kind of report, the information must pertain to a report of some kind." Pls.' Reply & Cross-Opp'n 19.

The Court is unpersuaded by *McKinley II*, which offers little analysis. Instead, it joins the chorus of courts in this District in holding that an agency need not identify a specific report to invoke Exemption 8. Controlling Circuit precedent has repeatedly emphasized that the text of Exemption 8—which includes all documents "contained in or *related to* examination, operating, or condition reports"—is "particularly broad [and] all-inclusive." *Heimann*, 589 F.2d at 533; *see also Pub. Invs. Arb. Bar Ass'n*, 771 F.3d at 4. Notably absent from the statutory text is any requirement that an agency identify a specific report to which withheld records relate, clarify the precise relationship between the withheld information and a particular report, or sort the identified report into one of Exemption 8's three categories. And the limited legislative history does not support the Plaintiffs' cramped view. *See Pub. Invs. Arb. Bar Ass'n*, 930 F. Supp. 2d at 63–70 (examining the legislative history); *see also McCullough v. FDIC,* 1980 U.S. Dist. LEXIS 17685, at *7 (D.D.C. July 28, 1980) ("[T]he legislative history, though limited, strongly implies that all records, regardless of the source, of a bank's financial condition and operations and in the

possession of a federal agency 'responsible for the regulation or supervision of financial institutions,' are exempt." (citation omitted)).

Accordingly, the Court holds that FHFA need not show that withheld records relate to a specific report. Exemption 8 protects all records "prepared in furtherance of [FHFA's] responsibility for the regulation or supervision of financial institutions," *Williams & Connolly LLP*, 39 F. Supp. 3d at 90 (cleaned up), and it "extends to any documents received by [FHFA] in the course of exercising its regulatory responsibilities in relation to the financial institutions whose information has been withheld," *Pub. Invs. Arb. Bar Ass'n*, 930 F. Supp. 2d at 62 (cleaned up).[4]

### 1. Application of Exemption 8

The Court now turns to the records at issue. FHFA invoked Exemption 8 for 2,056 withholdings that fall into five categories: (1) examination reports (final and draft); (2) other supervision documents (final and draft); (3) materials provided by regulated entities; (4) correspondence and emails between FHFA and regulated entities; and (5) internal FHFA correspondence and emails. Wright Decl. ¶¶ 42–50; *accord* Pls.' Reply & Cross-Opp'n 16 (adopting this five-category framework). The Court considers each category in turn.

Exemption 8 undisputedly applies to the first category, which "consists of [draft and final] examination reports prepared by FHFA as part of its supervision of" regulated entities. Wright Decl. ¶ 42. Even the Plaintiffs admit as much, though they stop short of conceding this point. Pls.'

[4] In their motion, the Plaintiffs say in passing that FHFA "does not specify how the withheld material relates to an entity that FHFA is responsible for regulating"—*i.e.*, the three failed banks that FHFA is no longer regulating. Mot. 15. They later appear to abandon this argument by not responding to FHFA's arguments on this point. *See* Pls.' Reply & Cross-Opp'n 17–20 (making only the three arguments discussed above). Regardless, Exemption 8 applies irrespective of whether a financial institution remains in operation. *See Gregory*, 631 F.2d at 898–99; *see also Pub. Citizen v. Farm Credit Admin.*, 938 F.2d 290, 293–94 (D.C. Cir. 1991) ("[F]or purposes of exemption 8 . . . examination reports need not pertain to an institution that is regulated or supervised by the withholding agency."). So this argument has no force.

Reply & Cross-Opp'n 17 ("Documents in the first category, 'Examination Reports (final and draft)' plausibly qualify [for Exemption 8]."). Exemption 8 straightforwardly protects these records.

The second category of records also falls within Exemption 8. It encompasses "material . . . contained in supervisory documents prepared by FHFA in its role as the safety and soundness regulator" for the regulated entities that it supervises, and "material that was collected and reviewed by FHFA examiners as part of the agency's supervisory mission," Wright Decl. ¶ 45. Because these records were "prepared in furtherance of [FHFA's] responsibility for the regulation or supervision of financial institutions," they fall within Exemption 8's scope. *Williams & Connolly LLP*, 39 F. Supp. 3d at 90 (cleaned up).

The final three categories also qualify for Exemption 8 withholding. The third category consists of "documents prepared by" regulated entities "and later provided to FHFA . . . in its role as the safety and soundness regulator for" those entities. Wright Decl. ¶¶ 46–47. The records "contain material that was collected and reviewed by FHFA examiners as part of the agency's supervisory mission." *Id.* ¶ 47. Similarly, the fourth and fifth sets of withholdings comprise communications between FHFA and regulated entities, covering material "shared with and prepared by FHFA examiners as part of the agency's supervisory mission," *id.* ¶ 49, and "correspondence and emails exchanged within FHFA as part of the agency's supervisory mission," *id.* ¶ 50. Exemption 8 "extends to any documents received by [FHFA] in the course of exercising its regulatory responsibilities in relation to the financial institutions whose information has been withheld." *Pub. Invs. Arb. Bar Ass'n*, 930 F. Supp. 2d at 62 (cleaned up). And it covers all records "prepared in furtherance of [FHFA's] 'responsib[ility] for the regulation or supervision of financial

institutions[.]'" *Williams & Connolly LLP*, 39 F. Supp. 3d at 90 (quoting 5 U.S.C. § 552(b)(8)). Thus, FHFA's third, fourth, and fifth categories of withholdings properly invoked Exemption 8.

Stepping back, the Court notes that even if the Plaintiffs are correct that Exemption 8 requires that each withheld document relate to a specific report, this record adequately makes that showing for many of the documents responsive to the FOIA request. The Plaintiffs sought the following records from FHFA: the agency's "internal rating system identifying safety and soundness for each individual FHLB bank," "quarterly supervisory reports," and communications about the three failed banks. PSOF ¶ 7; DSOF ¶ 1. On this record, FHFA's "internal rating system identifying safety and soundness" for each bank is plainly related to FHFA's obligation to produce annual reports on the "financial safety and soundness of each regulated entity." 12 U.S.C. § 4521(a)(2). And there can be no genuine dispute that the agency's "quarterly supervisory reports" qualify for Exemption 8. *See* Pls.' Reply & Cross-Opp'n 17. On any reading of the statutory text, Exemption 8 protects the first two categories of requested documents.

**2. Foreseeable Harm**

Although the agency's Exemption 8 withholdings fall within the exemption, that does not end the inquiry. An agency may "withhold information . . . only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I). "The foreseeable harm requirement imposes an independent and meaningful burden on agencies" "to foreclose the withholding of material unless the agency can articulate both the nature of the harm from release and the link between the specified harm and specific information contained in the material withheld." *Reps. Comm. for Freedom of the Press v. FBI* (*Reps. Comm.*), 3 F.4th 350, 369 (D.C. Cir. 2021) (cleaned up). When an agency satisfies its burden on "a category-by-category basis rather than a document-by-document basis . . . the basis and likelihood of that harm must be

independently demonstrated for each category." *Id.* Agencies must also conduct a segregability analysis to "consider whether exempt portions of a record could be disclosed without causing foreseeable harm to the interests protected by [the relevant FOIA exemption]." *Rudometkin v. United States*, 140 F.4th 480, 494 (D.C. Cir. 2025) (cleaned up).

Determining foreseeable harm to an "interest protected by an exemption" necessarily entails identifying the interests that the exemption shields. As the D.C. Circuit has recognized, Exemption 8 protects two main interests. *See Leopold v. DOJ*, No. 19-cv-3192, 2026 WL 113618, at *8 (D.D.C. Jan. 15, 2026). First, "the primary reason for adoption of [E]xemption 8 was to ensure the security of financial institutions. Specifically, there was concern that disclosure of examination, operation, and condition reports containing frank evaluations of the investigated banks might undermine public confidence and cause unwarranted runs on banks." *Heimann*, 589 F.2d at 534 (footnotes omitted). In other words, "Congress enacted Exemption 8 to address the 'concern[] that release of bank examination and operating reports could endanger the fiscal well-being of [] subject banks.'" *Pub. Invs. Arb. Bar. Ass'n.*, 771 F.3d at 5 (quoting *Heimann*, 589 F.2d at 533). Second, Congress sought to "safeguard the relationship between the banks and their supervising agencies." *Heimann*, 589 F.2d at 534. After all, "[i]f details of the bank examinations were made freely available to the public and to banking competitors . . . banks would cooperate less than fully with federal authorities." *Id.*

Here, FHFA's declarants have explained that releasing the "candidly shared" information, analysis, and discussions "of the financial condition of the regulated entities" withheld under Exemption 8 "would cause substantial harm" to those entities. Wright Decl. ¶¶ 43, 45, 47, 49, 51; *see also* Stallings Decl. ¶ 36, ECF No. 44-2 ("Release of such confidential bank supervisory information to competitors and the public at large, would stifle candid evaluations of financial

institutions, and would harm the relationship between such institutions and their supervisory agencies.”). Both justifications—harm to regulated banks and disincentivizing cooperation between banks and regulators—cohere with the interests protected by Exemption 8.

The Plaintiffs resist this conclusion on two primary grounds. First, they attack the conclusory nature of FHFA’s declarations. The Court agrees that the relevant statements toe the line of the “boilerplate, unparticularized, and hypothesized assertion[s] of harm” that are insufficient to sustain a FOIA withholding. *Reps. Comm.*, 3 F.4th at 371; *see Machado Amadis v. Dep’t of State*, 971 F.3d 364, 371 (D.C. Cir. 2020). But the Court is ultimately persuaded that FHFA has met its burden. FHFA’s declarations focus on the “financial condition” and “confidential bank supervisory information” contained in the withheld records. Wright Decl. ¶¶ 43, 45, 47, 49, 51; Stallings Decl. ¶ 36; *see Machado Amadis*, 971 F.3d at 371 (affirming the sufficiency of declarations that “specifically focused on the information at issue in the [documents] under review” and concluding “that disclosure of that information would” harm protected interests). “In other words, [FHFA has] directly articulated ‘[a] link between the specified harm and the specific information contained in the material withheld.’” *Reps. Comm.*, 3 F.4th at 371 (quoting H.R. Rep. No. 114-391, at 9 (2016)).

Second, the Plaintiffs assert that no harm can foreseeably befall defunct banks. *See* Pls.’ Reply & Cross-Opp’n 13. Perhaps, but FHFA could reasonably foresee that the disclosure of records related to shuttered banks could chill disclosure by operational banks. After all, if banks knew that documents related to FHFA’s supervision could become the object of public scrutiny if they failed, they might be more reluctant to engage in the candid regulatory cooperation that Exemption 8 was designed to protect. Similarly, the Plaintiffs argue that no harm could result from the release of information painting a regulated bank in a positive light. *Id.* at 21. But FHFA could

reasonably foresee that the public disclosure of banks' closely-held information could provide their competitors with key insights, putting a damper on future cooperation. *See McKinley I*, 744 F. Supp. 2d at 143 (noting that one of the purposes of Exemption 8 was "to safeguard the relationship between the banks and their supervising agencies because if details of the bank examinations were made freely available to the public *and to banking competitors*, banks would cooperate less than fully with federal authorities" (emphasis added)).

In sum, FHFA has furnished sworn declarations articulating the specific harms that it foresees if the withheld documents are disclosed. And its reasons align with the twin interests shielded by Exemption 8. FHFA thus "correctly understood the governing legal requirement and reasonably explained why it was met here." *Machado Amadis*, 971 F.3d at 371.

FHFA has also met its burden as to segregability. According to one of FHFA's declarants, the agency "reviewed all the withheld exempt information and determined that no additional information could be segregated and released without causing foreseeable harm to the agency or the interests protected by the FOIA Exemption being asserted." Wright Decl. ¶ 53. Sworn agency declarations are afforded "a presumption of good faith" in FOIA litigation. *Shapiro v. DOJ*, 944 F.3d 940, 943 (D.C. Cir. 2019) (cleaned up). And at the summary judgment stage, "an agency claiming a FOIA exemption may carry [its] burden by the production of affidavits." *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 586 (D.C. Cir. 2020). Thus, affording FHFA the presumption of regularity to which it is entitled, the Court is satisfied that it has complied with its segregability obligation. The Court will grant summary judgment in favor of FHFA on Exemption 8.

### B. Exemption 4

Next up is Exemption 4. FHFA invokes Exemption 4 to withhold 1,292 records.[5] PSOF ¶ 18. The Court concludes that FHFA has met its burden to withhold these records.

Exemption 4 "shields from disclosure 'trade secrets and commercial or financial information obtained from a person and privileged or confidential.'" *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 431 (2019) (quoting 5 U.S.C. § 552(b)(4)). "When an agency withholds non-trade-secret information under Exemption 4, it must demonstrate that the withheld information is '(1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential.'" *Citizens for Resp. & Ethics in Washington v. DOJ* (*CREW*), 58 F.4th 1255, 1262 (D.C. Cir. 2023) (quoting *Pub. Citizen Health Rsch. Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1982)).

FHFA's Exemption 4 withholdings fall into the same five categories discussed for Exemption 8: (1) examination reports (final and draft); (2) other supervision documents (final and draft); (3) materials provided by the regulated entities; (4) correspondence and emails between FHFA and regulated entities; and (5) internal FHFA correspondence and emails. Wright Decl. ¶¶ 6–20. FHFA does not claim that any of the withheld information constitutes trade secrets, *see* Wright Decl. ¶ 4; Pls.' Reply & Cross-Opp'n 6 n.4, so its withholdings must satisfy the three-part test for non-trade-secret information. The Court addresses each element in turn.

---

[5] FHFA correctly asserts that the "overwhelming majority of documents withheld under Exemption 4 also were withheld under Exemption 8." Cross-Mot. 11 n.4. It is well-settled that if documents are properly withheld under one exemption, the Court need not determine the applicability of other exemptions. *See, e.g.*, *Larson v. Dep't of State*, 565 F.3d 857, 862–63 (D.C. Cir. 2009) ("[C]ourts may uphold agency action under one exemption without considering the applicability of the other."). But here, not all documents withheld under Exemption 4 were withheld under Exemption 8. *See, e.g.*, *Vaughn* Index, ECF No. 41-2 (invoking Exemption 4 alone to withhold documents 2131, 2132, 2133, and 2163). The Court therefore considers the propriety of FHFA's withholdings under Exemption 4.

### 1. Commercial or Financial

First, information withheld under Exemption 4 must be "commercial or financial." *CREW*, 58 F.4th at 1262. The "information must be commercial in and of itself; meaning it serves a commercial function or is of a commercial nature." *Id.* at 1263 (cleaned up). "Because FOIA does not define the word 'commercial,'" the term takes on its ordinary meaning, so "information is commercial if it pertains to the exchange of goods or services or the making of a profit." *Id.* "Exemption 4 paradigmatically applies to records that a business owner customarily keeps private because they actually reveal basic commercial operations, such as sales statistics, profits and losses, and inventories, or [that] relate to the income-producing aspects of a business." *Id.* (cleaned up). And the D.C. Circuit has "defined commercial information to include, for example, a firm's data or reports on its commercial service or its product's favorable or unfavorable attributes or information an industry has gathered regarding its competitive strengths and weaknesses." *Id.* at 1265 (cleaned up); *see also ISC Grp., Inc. v. DOD,* 88-cv-0631, 1989 WL 168858, at *2 (D.D.C. May 22, 1989) (concluding that Exemption 4 protected an internal corporate investigative report submitted to an agency that contained "operations statements, financial summaries and forecasts, inventory and labor data, and other financial analyses"). That said, "not every bit of information submitted to the government by a commercial entity qualifies for protection under Exemption 4[.]" *Pub. Citizen*, 704 F.2d at 1290.

Here, FHFA has adequately showed that the withheld information is "commercial or financial" within the meaning of Exemption 4. FHFA's sworn declarations state that documents withheld in each of the five categories contain "confidential commercial and financial information" provided to the agency by regulated entities that "informed" FHFA's supervision of those entities. Wright Decl., ¶¶ 6, 8, 9, 11, 12, 14, 15, 17, 18, 20; *see also* Stallings Decl. ¶ 7

(explaining that the regulated entities "provide FHFA examiners with detailed information about their business processes and activities to facilitate the examiners' analysis of the[ir] operations"). The first two categories include "Financial Condition and Performance Quarterly Reports, Quarterly Market Risk Monitoring Reports, Quarterly Mark Risk Profiles, Mortgage Program Policy and Analysis reports, Collateral Monitoring Profile reports, Credit and Collateral Risk Modeling Contemporary Unsecured Credit Risk reports and Quarterly Member Credit Profiles." Wright Decl. ¶ 6; *see also id.* ¶ 9 (describing the second category of withheld records as "includ[ing] Year-End profiles for the Regulated Entities, Financial Performance Reports for the Federal Home Loan Bank System, Federal Home Loan Bank activity reports, and other supervisory memoranda and presentations prepared by FHFA with confidential information provided to the agency by the Regulated Entities"). The third category includes internal memoranda, presentations, and Board and Committee materials prepared by the regulated entities. Wright Decl. ¶ 12. And the fourth and fifth categories include communications between the regulated entities and FHFA that "contain, discuss and analyze confidential commercial information that FHFA obtained from the regulated entities." *Id.* ¶¶ 16, 19.

These records contain quintessential commercial or financial information encompassed by Exemption 4. *See CREW*, 58 F.4th at 1265 (finding that a bank's internal memoranda, presentations, and Board and Committee materials "demonstrably pertain[] to the exchange of goods or services or the making of a profit"). In arguing otherwise, the Plaintiffs say only that FHFA has not shown that it has withheld *exclusively* commercial information under Exemption 4. Pls.' Reply & Cross-Opp'n 8. But this argument goes to segregability, not exemption from disclosure. At bottom, FHFA has a statutory obligation to "oversee the prudential operations of each regulated entity," including ensuring that they "maint[ain] [] adequate capital and internal

controls" and that their activities "foster liquid, efficient, competitive, and resilient national housing finance markets." 12 U.S.C. § 4513(a)(1). In other words, FHFA's core responsibility is to oversee the commercial activities and financial condition of the regulated entities within its reach. It is unsurprising, then, that much (but not necessarily all) of the information provided to FHFA by regulated entities in the course of FHFA's supervision is commercial or financial in nature. Here, FHFA's sworn declarations make that clear.

**2. Obtained From a Person**

Second, Exemption 4 applies only to information "obtained from a person." 5 U.S.C. § 552(b)(4). For FOIA purposes, the term "'person' includes an individual, partnership, corporation, association, or public or private organization other than an agency[.]" *Id.* § 551(2); *accord Ctr. For Biological Diversity v. United States Forest Serv.*, No. 23-cv-00928, 2025 WL 947472, at *7 (D.D.C. Mar. 28, 2025). In other words, "[i]nformation is considered 'obtained from a person' if the information originated from an individual, corporation, or other entity, and so long as the information did not originate within the federal government." *Elec. Priv. Info. Ctr. v. DHS*, 117 F. Supp. 3d 46, 63 (D.D.C. 2015).

Here, the records obtained from regulated entities were "obtained from a person." *Cf. Leopold v. DOJ*, No. 19-cv-3192, 2021 WL 124489, at *6 (D.D.C. Jan. 13, 2021) (applying Exemption 4 to a report issued by an independent bank monitor). So too are FHFA's records incorporating information provided by regulated entities, including FHFA-authored documents and correspondence. *Flyers Rts. Educ. Fund, Inc. v. FAA*, 71 F.4th 1051, 1056–57 (D.C. Cir. 2023) (noting that Exemption 4 protects information from third parties "even when the government incorporates that information into its own documents" and rejecting the argument that "Exemption 4 protects agency-authored materials only where they contain third-party information repeated

verbatim, slightly modified, or summarized"); *see also Gulf & W. Indus., Inc. v. United States*, 615 F.2d 527, 529–30 (D.C. Cir. 1979) (upholding the redaction from an agency report of "data supplied to the government from a person outside the government").

### 3. Privileged or Confidential

Third, the withheld information must be "privileged or confidential." 5 U.S.C. § 552(b)(4). As the Supreme Court has explained, information is "confidential" under Exemption 4 only if "it is customarily kept private, or at least closely held, by the person imparting it[.]" *Argus Leader*, 588 U.S. at 434; *see also Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 244 F.3d 144, 148 (D.C. Cir. 2001) ("[I]n assessing customary disclosure, the court will consider how the particular party customarily treats the information, not how the industry as a whole treats the information."). In *Argus Leader*, the Supreme Court also noted that "information might be considered confidential only if the party receiving it provides some assurance that it will remain secret." 588 U.S. at 434. But the *Argus Leader* Court did not determine whether such assurances of secrecy are necessary to invoke Exemption 4. *See id.* at 434–35. Neither has the D.C. Circuit. *See CREW*, 58 F.4th at 1269. So "the current law of the D.C. Circuit . . . is that information is confidential under Exemption 4 if it is of a kind that would customarily not be released to the public by the person or entity from whom it was obtained." *Gandhi v. Ctrs. for Medicare & Medicaid Servs.*, 665 F. Supp. 3d 49, 55 (D.D.C. 2023) (cleaned up). Nonetheless, courts in this District have considered assurances of secrecy in evaluating the customs and practice of the submitting party. *See*, *e.g.*, *Humane Soc'y Int'l v. United States Fish & Wildlife Serv.*, No. 16-cv-720, 2021 WL 1197726, at *5 & n.4 (D.D.C. Mar. 29, 2021) (collecting cases for the proposition that "even after [*Argus Leader*], courts in this District have continued to recognize that the circumstances under which a company submits information to the government bears on whether

that information remains confidential"); *WP Co. LLC v. Nat'l Highway Traffic Safety Admin.*, No. 24-cv-1353, 2026 WL 820742, at *4 (D.D.C. Mar. 25, 2026) (applying same).

Here, FHFA has provided sworn declarations attesting to the confidential character of the withheld information. One declarant states that each document across the five categories withheld under Exemption 4 "is normally kept confidential" by the regulated entities, "is not released to the public," and "was provided to FHFA with the understanding that the information would remain private." Wright Decl. ¶¶ 7, 10, 13, 16, 19. Another declarant similarly attests that the regulated entities "provide [FHFA] examiners with confidential commercial and financial information about their business operations . . . with the express understanding that FHFA will maintain the confidentiality of that information as the agency uses the information to conduct its supervisory analyses" and "knowing that FHFA will protect the confidentiality of nonpublic information whose release would harm the[ir] business activities." Stallings Decl. ¶ 7. These declarations suffice. "[D]eclarations submitted by agency personnel are appropriately considered on a motion for summary judgment in a FOIA case, as long as they satisfy the personal knowledge requirement of Rule 56." *Leopold*, 2021 WL 124489, at *5; *see also Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981) (holding that an agency official was competent to testify to "his own observations upon review of the documents . . . the agency's procedures with respect to investigations during his own tenure therewith and earlier practices of which he possesse[d] personal knowledge, and his personal experiences as an agent to the extent that they bore relevance to the case"). And "summary judgment on the basis of such agency affidavits is warranted if the affidavits describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Mil.*

*Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also ACLU*, 628 F.3d at 619 (same).

In urging otherwise, the Plaintiffs argue that FHFA's declarants lack personal knowledge of the regulated entities' confidentiality practices, and that to the extent that their knowledge is based on the regulated parties' statements to FHFA, it is inadmissible hearsay. Pls.' Reply & Cross-Opp'n 8–10. To be sure, otherwise inadmissible hearsay generally cannot be considered at summary judgment.[6] *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000). But here, FHFA's declarants have attested that their statements are based on personal knowledge acquired through their official duties. *See* Wright Decl. 1 (stating that it is "based upon the knowledge that [the declarant has] acquired through the performance of [] official duties, [] personal knowledge, and [] review of the responsive agency records"); Stalling Decl. ¶¶ 7–8 (explaining that the declarant has "extensive knowledge of the exchange of information that is required for supervision of the Regulated Entities" and is "familiar with the agency's use of confidential business and financial information provided by the Regulated Entities"). The Plaintiffs provide no reason why the Court should disregard these statements.

Meanwhile, the Plaintiffs' cited cases are inapposite. They rely on *Government Accountability Project v. United States Department of Treasury*, No. 20-cv-2138, 2025 WL 721734 (D.D.C. Mar. 6, 2025), where the court excluded an agency affidavit that recounted "second-hand, summary accounts" of the private party who had submitted the withheld information. *Id.* at *3 (cleaned up). And they invoke *Friends of Animals v. Bernhardt*, 15 F.4th

[6] The D.C. Circuit has recognized that declarations in FOIA cases may include otherwise inadmissible hearsay obtained by agency officials from their colleagues. *See DiBacco v. Dep't of the Army*, 926 F.3d 827, 833 (D.C. Cir. 2019); *Weisberg v. DOJ*, 705 F.2d 1344, 1358 (D.C. Cir. 1983). But this "intra-agency" hearsay exception is immaterial when, as here, the alleged hearsay consists of statements made by non-agency personnel.

1254 (10th Cir. 2021), where the agency declarant simply relayed the submitter's description of their confidentiality practices. *Id.* at 1271–72. Neither provides a basis for excluding the statements of FHFA's declarants.

Finally, the Plaintiffs contend that FHFA cannot invoke Exemption 4 to withhold information about the failed banks because FHFA has not specifically claimed that those banks customarily and actually kept the information confidential. Pls.' Reply & Cross-Opp'n 10–11. But the Parties do not dispute that FHFA regulated the failed banks before their collapse. *See* PSOF ¶ 1. Indeed, the purpose of the FOIA request is to uncover information about FHFA's oversight (or lack thereof) of the failed banks and whether it contributed to their failure. *See* Leopold Decl. ¶ 5, Ex. 1, ECF No. 37-3. Viewed in this context, it is difficult to understand why the Court should distinguish between regulated entities and the now-failed banks—both (presumably) provided the same types of commercial information to FHFA while under its supervision.

In sum, FHFA has sufficiently shown that the information withheld under Exemption 4 was "confidential or privileged" for purposes of Exemption 4. Because FHFA has demonstrated that it withheld "commercial or financial information obtained from a person and privileged or confidential," 5 U.S.C. § 552(b)(4), its withholdings fall within Exemption 4.

**4. Foreseeable Harm**

Recall that FHFA must also show that it "reasonably foresees that disclosure would harm an interest protected by" Exemption 4. 5 U.S.C § 552(a)(8)(A)(i). Although there remains an "open question as to the scope of the interest Exemption 4 seeks to protect," *Shteynlyuger v. Ctrs. for Medicare and Medicaid Servs.*, 698 F. Supp. 3d 82, 123 (D.D.C. 2023), the D.C. Circuit has long recognized that Exemption 4 is designed to "encourage individuals to provide certain kinds of confidential information to the Government" and "protect[] persons who submit financial or

commercial data to government agencies from the competitive disadvantages which would result from its publication." *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 768 (D.C. Cir. 1974) (quoting H.R. Rep. No. 89-1497, at 10 (1966)), *abrogated on other grounds by Argus Leader*, 588 U.S. 427; *see also Greenspan v. DOT*, No. 22-cv-280, 2025 WL 2591784, at *5 (D.D.C. Sept. 8, 2025) ("In the Exemption 4 context, [the foreseeable harm] requirement is met if disclosure would cause genuine harm to the submitter's economic or business interests and thereby dissuade others from submitting similar information to the government." (quoting *CREW v. DOJ*, 728 F. Supp. 3d 113, 125 (D.D.C. 2024) (cleaned up)).

Consistent with Exemption 4's purposes, FHFA's declarations explain that it invoked Exemption 4 to withhold each of the five categories of "confidential information obtained from the Regulated Entities" because releasing those records "would harm the business operations of the companies, and make it more difficult for FHFA to ensure that the Regulated Entities operate in a safe and sound manner." Wright Decl. ¶¶ 8, 11, 14, 17, 20. FHFA also attests that release of the withheld information would "harm the business activities of the Entities," Stallings Decl. ¶ 7, and "harm the relationship between such institutions and their supervisory agencies," *id.* ¶ 36. The business and regulatory-cooperation harms FHFA identifies cohere with the interests that Exemption 4 protects. Moreover, by describing problems that are unique to the context of commercial regulation, FHFA's declarations "articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld." *Reps. Comm.*, 3 F.4th at 369 (quoting H.R. Rep. No. 114-391, at 9). By cabining its withholdings to specific commercial information and explaining why disclosure of that information would "impede the interests protected" by Exemption 4, *Leopold*, 94 F.4th at 37, FHFA has met its burden on foreseeable harm as to its Exemption 4 withholdings.

FHFA has also adequately met its burden to "independent[ly] consider[] [] whether any portion of a document, although exempt, could be segregated and released without causing foreseeable harm." *Rudometkin*, 140 F.4th at 494. Its sworn declaration states that the agency "reviewed all the withheld exempt information and determined that no additional information could be segregated and released without causing foreseeable harm to the agency or the interests protected by the FOIA Exemption being asserted." Wright Decl. ¶ 22. And as with Exemption 8, the Plaintiffs offer no evidence to rebut the presumption that FHFA complied with its segregability obligations. Therefore, the Court will grant summary judgment to FHFA on Exemption 4.

**C. Exemption 5**

Turning to Exemption 5, FHFA withheld 1,746 records, PSOF ¶ 21, grouped into three categories: "(1) draft examination reports, (2) draft supervisory documents, and (3) internal Agency correspondence and emails[.]" Cross-Mot. 16 (citing Wright Decl. ¶¶ 23–32). Most of these records were also withheld under Exemption 4 and Exemption 8. But because Exemption 5 is the sole basis for withholding certain documents, the Court must address it.[7]

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5). "To qualify under this exemption, a document must 'satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it.'" *Welter v. U.S. Dep't of the Air Force*, No. 22-cv-3738, 2026 WL 1243400, at *3 (D.D.C. May 6, 2026) (quoting *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1,

[7] For instance, FHFA invokes Exemption 5 as the sole basis for withholding documents 1, 15, 29, 32, 33, 41, 60, and 67. *See Vaughn* Index.

8 (2001)). Relevant here, Exemption 5 includes the deliberative-process privilege. *Klamath Water Users*, 532 U.S. at 8. "To carry its burden at summary judgment, the government must demonstrate that (A) the materials at issue are covered by the deliberative process privilege, and (B) it is reasonably foreseeable that the release of those materials would cause harm to an interest protected by that privilege." *Reps. Comm.*, 3 F.4th at 361; *see* 5 U.S.C. § 552(a)(8)(A)(i)(I).

The Plaintiffs do not dispute that the source of the draft reports and internal emails at issue is a government agency, "so the remaining questions are whether [FHFA] has proven entitlement to the privilege as well as reasonably foreseeable harm." *Welter*, 2026 WL 1243400, at *3. Because the Court concludes that FHFA has failed to make a sufficient showing on foreseeable harm, it need not determine whether the deliberative process privilege applies. *See Levin v. Nat'l Highway Traffic Safety Admin.*, No. 20-cv-3236, 2026 WL 523017, at *4 (D.D.C. Feb. 25, 2026) (same approach).

"In adopting [the foreseeable harm] requirement in 2016, Congress was especially concerned about agencies' overuse of Exemption 5 and the deliberative process privilege[.]" *Mountgordon v. U.S. Coast Guard*, 691 F. Supp. 3d 72, 84 (D.D.C. 2023) (cleaned up). A withholding agency may not satisfy its "independent and meaningful burden" to show foreseeable harm by "boilerplate and generic assertions that release of any deliberative material would necessarily chill internal discussions." *Reps. Comm.*, 3 F.4th at 369–70. Instead, the agency must "specifically focus[] on the information at issue in the [documents] under review." *Machado Amadis*, 971 F.3d at 371. For example, the D.C. Circuit rejected as "scanty" the following foreseeable-harm description:

> Disclosure of [material containing or prepared in connection with the formulation of opinions, advice, evaluations, deliberations, policies, proposals, conclusions, or recommendations] would have an inhibiting effect upon agency decisionmaking and the development of policy because it would chill full and frank discussions

> between agency personnel and decision makers regarding a decision. If agency personnel know that their preliminary impressions, opinions, evaluations, or comments would be released to the general public, they would be less candid and more circumspect in expressing their thoughts, which would impede the fulsome discussion of issues necessary to reach a well-reasoned decision.

*Reps. Comm.*, 3 F.4th at 370.

Here, FHFA's generic description mirrors the foreseeable-harm analysis rejected by the Circuit. With respect to each of the three categories of records withheld under Exemption 5, FHFA's declaration states simply that "release would have a chilling effect on the willingness of FHFA officials to provide candid and complete comments on draft documents being prepared by FHFA," Wright Decl. ¶¶ 26, 28, or "would have a chilling effect on the willingness of agency officials to record and share their thoughts, opinions and deliberations on decisions to be made by the Agency," *id.* ¶ 30. These "assertions [that] describe general and hypothetical harms, such as 'chilled' internal collaborations . . . could apply to the release of almost any government document covered under the deliberative process privilege." *Levin*, 2026 WL 523017, at *6; *see also Am. Oversight v. DHS*, 691 F. Supp. 3d 109, 117 (D.D.C. 2023) (finding a statement that releasing drafts would "discourage the expression of candid opinions . . . between agency personnel" and "adversely impact the quality of internal policy decisions" insufficient to show foreseeable harm because those "objections could apply to basically any withheld draft"). Because FHFA's explanation of the foreseeable harm that would result from disclosure of the withheld documents "just mouth[s] the generic rationale for the deliberative process privilege itself," *Reps. Comm*, 3 F.4th at 370, FHFA does not meet its burden.

When an agency fails to meet its burden to show foreseeable harm, a court may order another *Vaughn* index or supporting affidavit. *See, e.g.*, *Ams. for Fair Treatment v. USPS*, 663 F. Supp. 3d 39, 63 (D.D.C. 2023). But given the history of this case, the Court declines to give FHFA another bite at the apple. FHFA has had two opportunities during briefing alone to support

its Exemption 5 withholdings. At every turn, FHFA has parroted the same conclusory explanation for the reasonably foreseeable harm that would result from disclosing the documents in question. This litigation has gone on for more than three years, and the Court will not prolong it further. *See Occupational Safety & Health L. Project, PLLC v. Dep't of Lab.*, No. 21-cv-2028, 2022 WL 3444935, at *12 (D.D.C. Aug. 17, 2022) (considering the duration of litigation in determining whether to provide the government a "second chance . . . to justify its withholding"); *see also S. All. for Clean Energy v. Dep't of Energy*, 853 F. Supp. 2d 60, 78 (D.D.C. 2012) ("In the context of FOIA litigation, information has a short shelf-life within which it can be useful to the requesting party[.]"). Thus, the Plaintiffs are entitled to summary judgment as to the documents withheld solely under Exemption 5. At this point, FHFA must release them.

**D. Exemption 6**

Finally, FHFA invokes Exemption 6, which protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(6). But the Parties seem to have resolved their Exemption 6 disputes. FHFA's *Vaughn* index contained 32 Exemption 6 assertions—25 redactions of personal information of government and bank employees and seven records withheld in full. *See* PSOF ¶ 23–24; Pls.' Reply & Cross-Opp'n 4; Wright Decl. ¶ 33. The Plaintiffs do not challenge the 25 redactions. *See* DSOF ¶ 6. And of the seven records withheld in full, the Plaintiffs have dropped their challenges to six of them. *See* Pls.' Sur-Reply 7 (stating that the Plaintiffs no longer challenge the withholding of documents 1381, 2061, 2065, 2066, 2067, and 2090). Thus, the Plaintiffs' sole remaining challenge is to document 1252. *See id.* But the Defendant's Cross-Reply states that "document 1252 will be released." Def.'s Cross-Reply 10. That resolves the matter.

## CONCLUSION

For the foregoing reasons, with respect to Exemption 4 and Exemption 8, the Court denies the Plaintiffs' Motion for Summary Judgment, ECF No. 37, and grants FHFA's Cross-Motion for Summary Judgment, ECF No. 41. With respect to Exemption 5, the Court grants the Plaintiffs' Motion for Summary Judgment, ECF No. 37, and denies FHFA's Cross-Motion for Summary Judgment, ECF. No. 41. With respect to Exemption 6, the Court denies both motions, ECF Nos. 37, 41, as moot.

A separate order will issue.

SPARKLE L. SOOKNANAN
United States District Judge

Date: September 11, 2026